UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-1964(JMR/FLN)

Julie Ring )
)
v. ) ORDER
)
Sears, Roebuck and Co. )

This matter is before the Court on defendant's motion for summary judgment. This case arises out of plaintiff's employment with Sears, Roebuck and Co. ("Sears").

Plaintiff's employment was terminated following a series of disputes she had with a coworker. Plaintiff brought this suit in Minnesota state court alleging wrongful retaliatory discharge, in violation of Minn. Stat. § 181.932. Defendant properly removed the case to this Court under its diversity jurisdiction, pursuant to 18 U.S.C. § 1332.

I. Background

Ms. Ring was hired by Sears as a part-time vacuum cleaner salesperson in the fall of 1997. Based on her strong performance, she was transferred to Brand Central -- a commission department -- to sell washers and dryers. There, she joined a number of salespeople, including long-time employee Linda Belke.

Almost from the beginning, the relationship between Ring and Belke was acrimonious. Belke appeared sensitive to criticism and workplace teasing, a fact exploited by Ring and other coworkers. On at least one occasion Ring called Belke a "cripple." Ring

MAR 5 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

acknowledges she found Belke rude and unethical, and accused her of "stealing another salesperson's customer immediately before checkout." The two women argued over "stacking" customers, a term used for simultaneously working with multiple customers. Ring considered stacking customers inappropriate and unethical because it interfered with the ability of all salespeople to earn commissions.

A. August, 1999

On August 8, 1999, the disputes between Ring and Belke changed from antagonistic to overtly hostile, when a heated argument erupted on the sales floor. All parties agree Ring insulted Belke by calling her a liar, a whore, and other profane names. In a written report filed with the company, Belke expressed both fear and confusion about the argument. Sears management then met jointly with both women, and Ring apologized for her behavior. The company explicitly warned Ring that further misconduct could result in her termination.

Ring claims she made an oral complaint to the manager, Sam Kamsheh, about Belke's fraudulent sales practices. Ring, however, has no documentation to support this claim.

B. September, 2000

In September, 2000, Ring submitted a letter to her supervisor, James Anderson, complaining of impropriety in Belke's sales practices. She specifically accused Belke of charging customers

for maintenance agreements they explicitly declined to purchase. She supported these allegations with a sales slip showing one of these charges and calls she had received from unnamed customers. Belke refunded this charge to the customer prior to Ring's report.

Upon receiving this complaint, Anderson promptly referred the matter to the loss prevention department and the ethics office. These departments reviewed Belke's sales receipts over several months, and generally monitored her sales documentation to determine if any unethical sales had occurred. Sears determined it would not directly contact any customers regarding a sale more than 90 days prior to the start of the investigation. Anderson asked Ring to give Sears any documentation in her possession to assist the company in its investigation. Although plaintiff claims she took extensive notes documenting Belke's workplace activities, she did not give these notes to management.

At approximately the same time, Anderson received notice of a customer complaint concerning Ring. According to the sales manager who received the call, the customer was "very disappointed that one of our associates called them at home to make inquiries that were purely commission driven." [Anderson Aff. Ex. 2.] The customer expressed her displeasure with Sears, and stated she was upset that she was called and questioned. Id.

C. October, 2000

In October, 2000, Anderson met individually with both Belke and Ring to discuss workplace performance. In his meeting with Belke, he highlighted her need to immediately improve her coworker relationships. He reviewed company policy regarding parking, scheduling, dress, and point-of-sale rules all mentioned in Ring's September letter. He then filed a performance plan for Belke outlining areas needing improvement.

In his meeting with Ring, Anderson and other human resource managers warned her that any more incidents involving Belke would result in Ring's termination. He explained that both she and Belke were culpable in their conflict.

Anderson told both employees that he was concerned about continued misbehavior, and that any unacceptable conduct by either of them would result in discharge. They were informed that customers had complained to management about their behavior. A written notice given to both stated "any salesfloor acts of hostility or disruption, any involvement of our customers in associate disputes or related acts of unprofessional behavior will result in the termination of the associate(s) responsible for the disturbances." Ring. Dep. Ex. 15.

D. April, 2001

On April 14, 2001, Ring and Belke had their last confrontation on the sales floor. Once again, they fought over a customer.[1] Ring accused Belke of stacking customers. The spat continued until Belke walked away. While the two women disagree as to the precise battle terms, their exact language is immaterial to the Court's determination. It is sufficient that the two employees again allowed their disagreements to spill into the public's view. The matter came to Mr. Anderson's attention when he received a customer's telephone call describing the incident. The caller told Anderson that Ms. Ring's behavior made her feel uncomfortable.

Shortly after this last confrontation, Ms. Ring took a leave of absence to deal with a family medical problem. When she returned, management met with her to discuss the incident. Her employment was then terminated.

II. Discussion

A. Legal Standard

Summary judgment is appropriate when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477

[1]Both concur that Ring approached Belke and accused her of stacking customers. Belke replied by telling Ring to stay out of her way on the floor. Ring says it was difficult to stay away from Belke because of the small work area. Both Sears and Belke claim Ring referred to Belke as a big person. Their version is supported by a customer's report/complaint. Anderson Aff. at 2-3, Anderson. Ex. 3.

U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

B. Minnesota Employment Law

Minnesota law preserves the long-standing presumption of at-will employment, under which an employer can dismiss an employee hired for an indefinite term at any time. Likewise, the employee is free to terminate their employment at any time. See Cedarstrand v. Lutheran Bhd., 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962); Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983). This policy preserves "the employer's prerogative to make independent, good faith judgments about employees [that] is important in our free enterprise system." Id.

The Minnesota legislature has modified this policy by enacting Minn. Stat. § 181.932 to protect an employee who "in good faith reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official." See Obst v. Microtron, Inc., 614 N.W.2d 196, 200 (8th Cir. 2000). Plaintiff claims she was fired in violation of this statute.

Because plaintiff claims she was the victim of wrongful termination, the motion for summary judgment is considered under the McDonnell Douglas burden shifting analysis. See Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 445 (Minn. 1983). Under McDonnell Douglas, if she is able to establish her prima facie case, the burden shifts to defendant to produce a legitimate non-retaliatory reason for the termination. Chadwell v. Koch Ref. Co., 251 F.3d 727, 733 (8th Cir. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). If defendant provides a legitimate non-retaliatory reason for the termination, the burden shifts back to plaintiff to demonstrate that the articulated reason is pretextual in nature. Id.

C. Has Plaintiff Presented a Prima Facie Case?

When faced with a motion for summary judgment, the plaintiff in a retaliation case must establish a prima facie case. Under Minnesota law, a prima facie case of retaliatory discharge consists of: (1) statutorily protected conduct by the employee; (2) adverse

employment action; and (3) a casual connection between the two. See Dietrich v. Canadian Pac. Ltd., 536 N.W.2d 319, 327 (Minn. 1995). Sears does not deny the first two elements: plaintiff was statutorily protected when she notified Sears of potentially fraudulent sales, and plaintiff was fired by Sears -- clearly an adverse employment action

For purposes of summary judgment, defendant acknowledges plaintiff engaged in statutorily protected activity by notifying it of potentially fraudulent sales. Any complaint regarding the customer maintenance agreements indisputably falls within the ambit of statutory protection. But Ring's other repeated complaints concerning Belke's work performance, unfair scheduling, failure to follow dress code, improper parking, and unseemly interaction with customers do not trigger statutory protection, because they do not report or implicate a violation of law. See Obst v. Microtron, Inc., 614 N.W.2d 196, 200 (Minn. 2000); id. at 204. Protected charges must be made for the good faith purpose of exposing an illegality. See id. at 202. To qualify as whistleblowing, a complaint must, at a minimum, involve "one who 'blows the whistle' for the protection of the general public, or at the least, some third person or persons in addition to the whistleblower. Were it otherwise, every allegedly wrongful termination of employment could, with a bit of ingenuity, be cast as a claim pursuant to Minn. Stat. § 181.932." See Anderson-Johanningmeier, 637 N.W.2d

270, 274 (Minn. 2002). The acts complained of here involve compliance with internal company policy; as such, they do not garner statutory protection.

There is similarly no dispute that Ring's dismissal is an adverse employment act. Plaintiff suggests that, in addition to her termination, her October, 2000, reprimand letter should be considered an adverse employment act. In her view, it materially altered the terms or conditions of her employment. See Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1245 (8th Cir. 1998). According to Ring, she suffered a significant loss of job responsibilities and function as a result of this reprimand. The Court finds her view of the reprimand letter flawed.

In Coffman, the plaintiff, an inventory control manager, lost her job responsibilities, including "ordering of important raw materials, supervisory responsibilities in the shipping department, and responsibility for building materials." Id. at 1243. She also lost a number of vacation days, was excluded from management meetings, and was treated by her direct supervisor in a way that limited her ability to do her job. Id. at 1243.

Here, any job alteration Ms. Ring feels she experienced was tangential to her employment. Sears did not change her duties at work, alter her benefits package, or take actions hampering her ability to do her job. While the October, 2000, disciplinary letter barred her from engaging in further verbal harassment and

halted any rogue investigation of Belke, the Court does not consider these to be adverse employment actions. Ms. Ring was merely barred from continuing the gross incivility she admits occurred.

While the first two elements of a prima facie case have been met, Ring has failed to establish a causal nexus between her complaint and her eventual termination. In order to sustain her claim, she must prove her protected complaint caused the adverse employment action. Chadwell, 251 F.3d at 734 (finding plaintiff must prove intentional retaliation to prove causation beyond a "more likely than not" standard).

In order to prove causation, plaintiff must show an intent to retaliate. See Kunferman v. Ford Motor Co., 112 F.3d 962, 965 (8th Cir. 1997); Hubbard, 330 N.W.2d at 445. Intent, of course, can be proven through a combination of knowledge and timing. See id. Where timing is suggested as proof of causation, however, the time between an employee's complaint and the employer's action must be "very close." See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (finding 20 months too long to establish causation); Hubbard, 330 N.W.2d at 445 (elapse of two days shows retaliation); Heimbach v. Riedman Corp., 175 F. Supp. 2d 1167, 1173-74 (D. Minn. 2001) (termination a few days after notification demonstrates causation).

The Eighth Circuit Court of Appeals has explicitly held a two month interval "so dilutes any inference of causation" that "as a matter of law [] the temporal connection could not justify a finding" of causal link. See Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002); Minnesota Assoc. of Nurse Anesthetists v. Unity Hosp., 59 F.3d 80, 83 (8th Cir. 1995) ("Long intervals between the conduct that is said to motivate an employer and the adverse employment decision complained of tend to undermine the inference that the discharge was retaliatory."). Notably, Sears began documenting problems with Ring's performance as early as August, 1999, thereby negating any inference of retaliation. See Smith v. Ashland, Inc., 250 F.3d 1167, 1174 (8th Cir. 2001).

The time lapse between her complaint and termination precludes a finding of causation in this case. Ring's last complaint to Sears about Belke's maintenance agreement sales practices occurred in September, 2000. See Ring Dep. at 63.[2] Ring cites no evidence other than her termination almost eight months after her complaint

[2]Plaintiff claims there was a second complaint about Belke's sales practices her last day on the sales floor which concerned an alleged falsified sale on April 28, 2001. Ring Dep. at 28-29. But a fair reading of the deposition shows the complaint was not made by Ms. Ring. It was instead made by coworkers. Ms. Ring's claims are clearly predicated on the September, 2000, letter. See, e.g. Ring. Dep. at 114. She only alludes to the April 28th sale as evidence of Belke's improper behavior. Id. at 186-88. Ms. Ring cannot use another's protected communication as the basis for her own adverse employment action.

connecting the two events. She refers to cold treatment by a manager in hardware -- a separate store department -- after the maintenance agreement complaint. The record, however, indicates that this manager was Belke's close friend. Absent some evidence that this manager knew of her complaint, the Court cannot assume the coldness involved maintenance agreements, and not the ongoing personality conflict with Belke.

Ring offers the timing of her performance plan as evidence of retaliation. The Court has found this letter was not an adverse employment action. Notwithstanding this determination, it is clear the performance plan was put into effect when a customer complained about Ring. Her proof is further undermined by the fact that Ms. Belke was placed on the exact same performance plan, and both employees were given identical warnings regarding future misconduct. Given the total similarity in treatment, the Court cannot find the performance plan shows causation at all, let alone can it be sufficient to meet Chadwell's higher "more likely than not" standard. Chadwell, 251 F.3d at 734.

C. Legitimate Non-Retaliatory Reason

Even if the Court found a prima facie case, Sears has offered a legitimate non-retaliatory reason for terminating Ring's employment. If plaintiff introduces a prima facie case, the burden shifts to defendant to identify a legitimate non-retaliatory reason for termination. See Phipps v. Clark Oil & Refining Corp., 408

N.W.2d 569, 572 (Minn. 1987). Here, Sears ended Ms. Ring's employment, citing her continued lack of professionalism. Given the documented history of fighting between Ring and Belke, the harassing phone calls to customers, and the multiple customer complaints concerning plaintiff, Sears has easily met its burden of producing a non-retaliatory reason for its termination.

D. Pretext for Illegal Retaliation

Ring is unable to show that Sears' proffered basis for her termination is a pretext for retaliation. At this stage of the McDonnell Douglas analysis it is "the rule in [the Eighth] Circuit . . . that [a] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that a [prohibited motive] was a determinative factor in the adverse employment decision." Cronquist v. City of Minneapolis, 237 F.3d 920, 926 (8th Cir. 2001) (citing Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996)). Ring has not met this burden.

Ring attempts to claim Sears' statements are pretextual by offering affidavits and testimony from coworkers who found Ms. Ring pleasant and Ms. Belke unpleasant.[3] Ring further argues that, having failed to directly contact customers and coworkers, Sears

[3]In support of her pretext arguments, Ring submits the affidavit of coworker Linda Stidger, who states Ring was an agreeable coworker, and Belke was disagreeable.

cannot reasonably believe Belke's version of events.

This evidence fails for two reasons. First, the coworker's statements regarding Belke's "unethical" behavior fail to satisfy Rule 56(e)'s requirement that statements in reply to a motion for summary judgment "be made on personal knowledge, . . . set forth such facts as would be admissible into evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated." Fed. R. Civ. P. 56(e). The proffered statements come from people with no expertise in ethics; they are replete with other-than-first-hand information. The affidavits do not show the requisite foundation upon which to base opinion statements. Absent some factual basis for their accusations, statements of this type are inadmissible. See, Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits must be made on personal knowledge, . . . [and] set forth such facts as would be admissible in evidence. . . .").

Even if admitted, Ring's evidence fails to show Sears's proffered reason for termination is pretexutal. The law bars this Court from second guessing every employment decision, even those based on arguably erroneous assumptions or credibility determinations. See Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 957 (8th Cir. 2001) (holding it is not unlawful for an employer to make employment decisions based on possibly erroneous evaluations). Instead, the relevant inquiry is whether the "employer believed [the] employee guilty of conduct justifying

discharge." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 n. 2 (8th Cir. 1994) (citing Elrod v. Sears Roebuck & Co., 939 F.2d 1446, 1470 (11th Cir. 1991)). In this case, two employees fought regularly with one another causing workplace disruption. Given the long history of animosity, Sears chose to credit statements made by Belke regarding the final April 14, 2001, disturbance. The law permits Sears to make exactly this type of credibility determination.[4]

Ms. Ring says Sears did not give her a spring, 2001, performance review. She suggests this proves a long-term intent to terminate her in retaliation for her report. This evidence fails. Even if in some cases a "failure" to give a performance review could be considered evidence of animus, Ms. Ring was voluntarily absent from work from April 14, 2001, until her termination. She has not submitted any evidence indicating that her coworkers received reviews before her leave, or that any reviews were given at all during the spring of 2001. Bald assertions and conclusory opinions lacking factual support do not create triable issues of fact to bar summary judgment.

---

[4]The Court also must consider that Sears is not in the business of seeking out its customers as witnesses in helping it decide which of two fighting coworkers it will choose to discipline. Similarly, its decision to decline to seek out a customer who Ring claims was improperly served -- more than six months after the event and in the absence of any indication of customer dissatisfaction -- is not unreasonable action by a retailer.

Ring finally claims Sears did not properly investigate her claims of misconduct. This argument is without merit; neither this Court nor Ms. Ring is empowered to dictate the way Sears is to investigate complaints beyond determining whether the company has done so.

It is not for this Court to impose on an operating business the duty to investigate employee disputes or employee complaints with the rigor of an investigating officer who wishes to prosecute a criminal case. Workplace disputes are distractions to companies engaged in the difficult enterprise of selling products to the public in a competitive environment. Certainly businesses must follow the law and afford protection to both customers and employees, but establishing the exact mechanisms by which they do so by judicial ukase is not the role of the Court.

However strongly Ms. Ring may feel that defendant should have questioned other employees about Belke and updated her regularly about the progress of their investigation, the law imposes no such duty. See Evers, 241 F.3d at 957 (finding a company's exercise of business judgment is not a place for judicial oversight). Sears's loss prevention group monitored Belke's sales, reviewed her past receipts, and investigated her sales records. While Ring asserts many customers complained, and sales slips showed the sale of unwanted service agreements, only one such sales slip was ever produced. Nothing on the record indicates Sears was willfully

blind to wrongdoing.

Similarly, while the Court has no question defendant strongly favors the sale of lucrative maintenance contracts, the Court declines to find this profit motive alone refutes the valid reason presented for Ring's termination. Neither Sears's weekly meetings stressing the importance of selling maintenance agreements, nor the fact management closely monitored who sold them, indicates Sears ignored illegal sales or that it fired Ring to facilitate Belke's allegedly illegal practices.

III. Conclusion

It is well settled Eighth Circuit law that "employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Kiel v. Select Artificials, 169 F.3d 1131, 1136 (8th Cir. 1999) (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995)). Absent evidence linking Ring's termination to her complaint about the improper sale of maintenance agreements, her claim fails as a matter of law. Ring has failed to produce evidence showing that Sears terminated her for any reason other than repeated unprofessional behavior. Accordingly, IT IS ORDERED that:

1. Defendant's motion to strike the Linda Stidger affidavit as inadmissible [Doc. No. 28] is granted.

2. Defendant's motion for summary judgment [Doc. No. 20] is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 4th, 2003

JAMES M. ROSENBAUM
United States Chief District Judge